UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SHARON WHITE,**

   Plaintiff,

v.                                                                  No. 4:23-cv-00585-P

**KROGER TEXAS, LP,**

   Defendant.

## ORDER & OPINION

This is a run-of-the-mill premises liability case. It presents no complex facts or novel legal issues. It is governed by long-established Texas common law.[1] By all accounts, it appears well at home in Texas state courts. So the Court understands why Plaintiff Sharon White moved to remand on July 3, 2023. *See* ECF No. 8. Nevertheless, having reviewed White's Motion to Remand and applicable legal authorities, the Court finds the Motion should be and hereby is **DENIED**.

## BACKGROUND

Sharon White slipped and fell in a grocery store operated by Defendant Kroger Texas, LP on March 6, 2023. She sued Kroger the next month in Texas state court. Kroger removed her case to this Court roughly a month later. White's original state-court petition specified a damages range between $250,000 and $1 million. Removal changed her mind. After Kroger removed White's case, she amended her pleadings to request damages less than $75,000. As Kroger predicated removal on diversity of citizenship, White seeks remand, arguing her case doesn't

---

[1] *See, e.g.*, *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815–16 (Tex. 2002) (collecting cases and explicating the historical development of slip-and-fall claims within Texas premises liability law); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (explaining the incorporation of slip-and-fall claims into Texas's pattern jury charges); *see also Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983) (first enumerating the factors of slip-and-fall liability).

reach the $75,000 jurisdictional minimum. That makes sense. But as explained below, the Court must deny White's requested remand.

## LEGAL STANDARD

"The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). Relevant here is diversity jurisdiction, which exists when the parties are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). For removals based on diversity, defendants must prove both complete diversity of citizenship and the requisite amount in controversy. *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 85 (5th Cir. 2013). The latter can be established by pointing to any good-faith assertion of damages in the plaintiff's original state-court petition. *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 314 (5th Cir. 2022).

## ANALYSIS

As noted above, Kroger bears the burden of establishing this Court's jurisdiction. *Mumfrey*, 719 F.3d at 397. Because Kroger removed White's case based on diversity, it can carry its burden only by showing (1) complete diversity of citizenship and (2) the amount in controversy exceeds $75,000. *Hood*, 737 F.3d at 85. The first prong is easy—White lives in Texas and Kroger, despite the legal name "Kroger Texas, LP," is an Ohio limited partnership. *See* ECF No. 1 at 2. So the only controversy involves the amount in controversy. As explained below, Kroger carries its burden in showing the case involves more than $75,000 in damages.

For her part, White points to the obvious fact that both her amended complaint in this case and her amended petition in the state-court case specify damages under the jurisdictional amount. *See* ECF No. 8 at 4 ("Plaintiff's live pleading unequivocally affirms that the amount in controversy does not exceed more than $75,000.00. Plaintiff's Amended Petition, attached to Defendant's *Notice of Removal* clearly articulates

'Plaintiff further pleads that she seeks less than $75,000.00.'").[2] But the Court's jurisdictional inquiry looks not to the live pleadings, but to the pleadings at the time of removal. *Guijarro*, 39 F.4th at 314; *accord Durbois v. Deutsche Bank Nat'l Tr. Co.*, 37 F.4th 1053, 1056 (5th Cir. 2022) (observing the "general rule that 'the sum demanded in good faith in the initial pleading' is 'the amount in controversy'" (quoting 28 U.S.C. § 1446(c)(2))).

At the time of removal, White sought damages somewhere between a quarter-million and a million bucks. *See* ECF No. 1-2 at 6. Notably, Texas's rules of procedure require damages *ranges*, not specific sums. *See* TEX. R. CIV. P. 47(c). And the enumerated ranges create ambiguity, as White points out. *See* ECF No. 8 at 4 (observing that "Texas law has not yet comported itself with 28 U.S.C. § 1332(a). Even the lowest category to be pled is well above the federal statutory limit for removal jurisdiction. This is why Plaintiff clearly stated in her Amended Petition that her case was not worth more than $75,000"). But there's a problem with that argument: while White predicates her argument on the *lowest* statutory range, her original complaint (the operative pleading at the time of removal) didn't specify the lowest range.

If White had originally specified damages under TEX. R. CIV. P. 47(c)(1) (amounting to "$250,000 or less"), the Court's analysis would be different. *See* 28 U.S.C. § 1446(c)(2)(A)(ii) (creating an exception for ambiguous state-court damages ranges like those under Rule 47(c)(1)). But White went with Rule 47(c)(2). *See* ECF No. 1-2 at 6 (showing White's original petition sought "monetary relief over $250,000 but not more than $1,000,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs to which Plaintiff is justly entitled"). Even at the lowest sum in that range, White's damages would exceed this Court's jurisdictional minimum by $175,000. Accordingly, the Court must **DENY** White's Motion.

---

[2]White's statement that her amended petition is attached to the removal notice is incorrect. White's *original* petition is attached to the removal notice; she didn't file her amended petition until June 22—two weeks after Kroger removed the case to federal court. *See* ECF No. 1-2 at 6–9.

## CONCLUSION

The Judiciary Act turned 233 this week. Among other things, the Act established federal courts' diversity jurisdiction.[3] Academics debate the impetus behind this unique jurisdiction. Conventional wisdom says the founders created diversity jurisdiction out of concerns that one state's citizen might not get a fair shake if tried before a jury of another state's citizens.[4] Enter the federal courts—a neutral arbiter that could adjudicate disputes between citizens of different states. The primary literature suggests another rationale was at least as strong: fear not of state juries, but of state legislatures. Many writings reflect skepticism among the Act's signers that layperson-elected state legislatures could furnish sophisticated legal frameworks to handle complex commercial disputes.[5] Enter once more the federal courts—a neutral arbiter that could ensure consistent application of law to interstate commercial disputes and thus "rise above" the whims of state legislators. Whatever the reason—fear of jury bias or fear of plebeian state lawmakers—

---

[3] *See* Act of September 24, 1789 (An Act to Establish the Judicial Courts of the United States), § 11, 1 Stat. 73 (codified as amended at 28 U.S.C. § 1332) (establishing that "[t]he judicial Power [of federal courts] shall extend . . . to Controversies between . . . Citizens of different States").

[4] This view is not without historical backing. *See, e.g.*, James Madison's remarks at the Virginia Convention, *reprinted in* 3 ELLIOT'S DEBATES, *The Debates in the Several State Conventions on the Adoption of the Federal Constitution* 533 (1836) (advocating for diversity jurisdiction because "a strong prejudice may arise in some states, against the citizens of others, who may have claims against them"); Alexander Hamilton's remarks in *Federalist No. 80*, THE FEDERALIST NO. 80, at 379 (Alexander Hamilton) (Terrance Ball ed., 2003) (noting federal courts should handle cases "in which one State or its citizens are opposed to another State or its citizens" to ensure "the inviolable maintenance of equality of privileges and immunities to which the citizens of the Union will be entitled" and reasoning that federal courts, "having no local attachments, will be likely to be impartial between different States and their citizens").

[5] *See generally* H. Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 HARV. L. REV. 483, 496 (1928) (suggesting "the desire to protect creditors against [state] legislation favorable to debtors was a principal reason for the grant of diversity jurisdiction"); 13 WRIGHT & MILLER, FED. PRAC. & PROC.: JURISDICTION & RELATED MATTERS § 3601 (3d ed. Apr. 2021) (examining commentaries that show diversity jurisdiction resulted from "a desire to protect commercial interests from class bias [in state legislatures]").

history is clear the Act's signers intended diversity jurisdiction to be the exception, not the rule.

One way the signers upped the jurisdictional ante was an "amount in controversy" requirement. Congress realized federal courts couldn't be bogged down by every interstate dispute that arose in the young republic. Indeed, if a Virginia farmer and a New York merchant wanted to duke it out in federal court at the time, they had to prove $500 or more was on the line.[6] That minimum was raised six times over the next two centuries, with the last change setting it at $75,000 in 1996.[7] The amount hasn't changed since, despite inflation reducing the buying power of $75,000 by orders of magnitude. Suffice it to say, changes have rendered the current threshold anachronistic, transforming a serious barrier to entry in 1789 into a speedbump today—to say nothing of the proliferation of interstate corporations that render "diverse citizenship" far more likely today than at the Act's signing.

Perhaps times have changed and the law hasn't kept up. It would certainly be fair for Ms. White to think so. But be that as it may, the Court's only job is to apply the law. And at the moment, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different states." *See* 28 U.S.C. § 1332 (a)(1). Ms. White is from Texas and the legal entity she sues isn't. *See* ECF No. 1 at 2. And White's pleading at the time of removal—the only pleading that controls—specifies damages more than $75,000. *See* ECF No. 1-2 at 6. Accordingly, the Court **DENIES** the Motion to Remand. ECF No. 8.

**SO ORDERED** on this **29th day** of **September 2023.**

Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[6] *See* S. Gensler & R. Michalski, *The Million-Dollar Diversity Docket*, 47 BYU L. Rev. 1653, 1656 (2022).

[7] *Id.*